# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2025-0673
Lower Tribunal No. 2024-CA-000413

_____

ESTANCIA US LIMITED PARTNERSHIP d/b/a LATITUDE 26 WATERFRONT RESORTS,

Appellant,

v.

TAMOY AJI-DAWKINS,

Appellee.

_____

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Lee County.
Keith R. Kyle, Judge.

August 14, 2026

TRAVER, C.J.

Estancia US Limited Partnership challenges the trial court's order granting Tamoy Aji-Dawkins' motion for leave to amend her complaint to seek punitive damages. We have jurisdiction. *See* Fla. R. App. P. 9.130(a)(3)(G). We reverse because Aji-Dawkins failed to meet her statutory burden to make a "reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." *See* § 768.72(1), Fla. Stat. (2024). Rather, her trial counsel repeatedly misrepresented the evidentiary record, causing

the trial court to grant a pleading amendment based on those misrepresentations.[1]
We direct the Clerk of Court to forward a copy of this opinion to The Florida Bar.

## I.

Aji-Dawkins sued Estancia for negligence on a premises liability basis, alleging she had fallen off the second story of Estancia's Fort Myers Beach hotel when a railing collapsed in April 2023. Before Aji-Dawkins argued her motion to amend her complaint to add punitive damages, she deposed Estancia's owner and his maintenance team, Robert Santiago and Eliasim Almestica. While the deposition testimony about some events salient to Aji-Dawkins' motion diverged, nobody disputes that Hurricane Ian damaged the hotel in September 2022, collapsing a corner of the hotel's second-story outdoor walkway. Rather than restoring that corner to pre-Ian conditions, Estancia's owner decided to close off the now-missing part of the walkway with PVC railings.

Santiago testified that he bought the PVC replacement railing that later precipitated Aji-Dawkins' lawsuit, but Almestica installed it. Santiago said that he never tested it after Almestica installed it, and that the only conversation he had with Estancia's owner about the railing happened after Aji-Dawkins' fall. He observed

---

[1] Appellate counsel did not represent Aji-Dawkins below. To his credit, he acknowledged his colleague's misrepresentations, but contended she may not have intentionally made them. Appellate counsel advanced a colorable but unpersuasive argument for affirmance based on the tipsy coachman doctrine.

then that the railing was a "breakaway" railing, designed to collapse under pressure and used "strictly for show." Santiago also stated that he saw a child go through a similar railing on the building's first floor before Aji-Dawkins' fall. But he offered no testimony that he had informed Estancia's owner about this previous incident.

Santiago also testified that he had one conversation with Almestica about the railing, in which he asked him why he installed a "plastic railing." This was the "only conversation" he remembered having with Almestica about the railing being plastic. He did not say that Estancia's owner was present for this conversation, or that it addressed a "breakaway" railing.

Almestica testified that he did not know who bought the replacement railing. But Santiago instructed him to install the PVC railing on his fourth day of work in January 2023. He said that he secured the railing properly and shook it vigorously after installation to test it, concluding it was safe. He also said that Santiago approved his work.

Estancia's owner testified that his "maintenance team," consisting of Santiago and Almestica, proposed the PVC railing idea to him and bought the railing. Because the railing was not aluminum, the owner went back to Home Depot to get its specifications. He noted that it had "approvals," and that after reviewing this information, the maintenance team approved and installed the PVC railing. He did not see the installation. But he inspected the installed PVC railing afterward. He

3

shook the PVC railing, and it did not move. He claimed that he had never heard of a "breakaway" railing. He also insisted that he had never heard of a prior railing collapse at any of his properties.

Estancia's owner authenticated a picture of the railing in its original packaging. The packaging did not mention that the railing would collapse or "breakaway," or that it was "strictly for show." Rather, it said the material was "our strongest and most durable ever!" It also said that it was "code approved for your safety" and listed an American Society for Testing and Materials report number in support.

Aji-Dawkins moved to amend her complaint to seek punitive damages. She based this request on Estancia's alleged gross negligence. In her proposed amended complaint, she alleged that Estancia "knew of the risk that the subject railing would give-way at the application of reasonably expected forces prior to the time of [Aji-Dawkins'] incident" and that Estancia "knew that a substantially similar railing on the property gave-way at the application of force by a child prior to the time of [Aji-Dawkins'] incident." Aji-Dawkins later supplemented her motion with documentation relating to Estancia's insurance claim and the depositions of Estancia's owner, Santiago, and Almestica.

At the hearing on Aji-Dawkins' motion, her trial counsel—the same attorney who took the depositions—argued that the "testimony of the two maintenance

employees" showed Estancia's owner "instructed them to install a plastic breakaway railing" after the owner purchased it. She said that Estancia's owner did this "knowing that that type of railing was not appropriate for use on a second-story balcony, that it was something that would collapse if somebody leaned on it." Later in the hearing, she reiterated that Estancia's owner had instructed "his maintenance folks" to install the railing "knowing from their statements to him that it was inappropriate to install that on the balcony and ignored that."

In response to the trial court's question about what testimony supported a gross negligence determination, Aji-Dawkins' trial counsel said that Estancia's owner told Almestica to install the railing after Almestica warned him that it should not be used that way. Aji-Dawkins' trial counsel reiterated that Almestica told Estancia's owner that the railing was a "breakaway railing" that was too weak for second-story usage. She later said that Santiago had installed the railing, even though he knew it was improper, and that Santiago had told Estancia's owner that a similar railing had broken on an earlier occasion when a child leaned on it. She later insisted that Santiago had advised Estancia's owner of this prior incident.

Relying on Aji-Dawkins' trial counsel's arguments, the trial court orally granted leave to amend to seek punitive damages. It ruled that "the maintenance worker" told Estancia's owner not to install the railing because "it's incorrect" and "kids have gotten hurt." It concluded that "an average person would say it's

5

outrageous to have placed a plastic bumper there without any further warning in light of the fact that it was specifically advised not to be used."

The trial court's subsequent written order, prepared by Aji-Dawkins' trial counsel, noted that Santiago "testified that, prior to the incident, he advised [Estancia's owner] against installing the PVC railing because he previously observed the same type of railing break away and fall to the ground when pressure was applied." The trial court noted that it based its written ruling solely on Santiago's testimony.

## II.

We review de novo the trial court's order allowing a pleading amendment to add a claim for punitive damages. *See Mercer v. Saddle Creek Transp., Inc.*, 389 So. 3d 774, 776 (Fla. 6th DCA 2024). A trial court does not act as a factfinder in these types of proceedings, and neither do we. *See Perlmutter v. Fed. Ins.*, 51 Fla. L. Weekly S163, S166 (Fla. June 11, 2026); *Turo, Inc. v. Mobley*, 430 So. 3d 243, 247 (Fla. 6th DCA 2026). We do not weigh evidence, and it is not our role to determine the truth of the matter. *See Perlmutter*, 51 Fla. L. Weekly at S166 ("[W]e note that the express words of [section 768.72(1)] do not tie the reasonableness inquiry to the trial-level standard of proof."). We consider the record evidence in the light most favorable to the plaintiff. *See id*. (citation omitted).

6

The Florida Legislature has implemented a framework that governs claims for punitive damages in civil actions. This framework "presumes that punitive damages claims will be the exception in [these] actions, not the rule." *McLane Foodservice Inc. v. Wool*, 400 So. 3d 757, 760 (Fla. 3d DCA 2024). Indeed, "[p]unitive damages are imposed not to compensate the plaintiff, but for punishment and deterrence." *Perlmutter*, 51 Fla. L. Weekly at S164 (citing *Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 825 (Fla. 1986)).

Recently, the Florida Supreme Court clarified the showing a plaintiff must make to obtain a pleading amendment to seek punitive damages. *See id*. It reiterated that section 768.72(1) "creates a substantive legal right not to be subjected to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages." *Id*. (quoting *Simeon, Inc. v. Cox*, 671 So. 2d 158, 160 (Fla. 1996)). And "the test for deciding evidentiary sufficiency under section 768.72(1) is whether a reasonable person could conclude, based on the claimant's evidence, that the defendant committed 'intentional misconduct' or 'gross negligence,' as defined in section 768.72(2)." *Id*. at S166 (citation omitted). "'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct,

7

resulting in injury or damage." § 768.72(2)(a). "'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b).

Section 768.72(3) addresses conditions under which an employer can face punitive damages for the conduct of its employees or agents. A plaintiff must alternatively show that: 1) "[t]he employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct"; 2) "[t]he officers, directors, or managers or the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct"; or 3) "[t]he employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant." *Id*. § 768.72(3)(a)–(c). "If the claimant seeks to plead punitive damages against an employer under a theory of vicarious liability, the evidentiary sufficiency test also must ask whether a reasonable person could conclude that the claimant's evidence satisfies the substantive legal criteria set out in section 768.72(3)." *Perlmutter*, 51 Fla. L. Weekly at S166.

Finally, we must "review the request for punitive damages in the context of the underlying claims." *Id*. (quoting *LoanFlight Lending, LLC v. Wood*, 388 So. 3d 1027, 1031 (Fla. 3d DCA 2024)). This is because a demand for "punitive damages

8

never stand[s] alone" as a separate cause of action. *Id*. (quoting *LoanFlight Lending, LLC*, 388 So. 3d at 1031). Rather, "it is auxiliary to, and dependent upon, the existence of an underlying claim." *Id*. (quoting *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1221 (Fla. 2016)).

III.

In the context of Aji-Dawkins' motion for leave to seek punitive damages, the *Perlmutter* Court has described a pleading-based standard that does not require her to prove her case. *See id*. at S167. But even under that standard, the evidentiary record does not support Aji-Dawkins' insistence that a reasonable person could conclude that Estancia committed gross negligence.[2] Aji-Dawkins' purported recitations of the maintenance team's depositions not only lack record support; they misrepresent the record. She pled her claims of gross negligence on two related bases: 1) Estancia's owner bought a plastic "breakaway" railing and instructed his maintenance team to install it on the hotel's second story, even though they told him it was not appropriate or strong enough for that usage; and 2) Santiago told Estancia's owner that a child had broken a similar railing by leaning on it. The trial court relied on these bases in granting Aji-Dawkins' motion. In its oral ruling, it

---

[2] We do not consider intentional misconduct because Aji-Dawkins' claim against Estancia does not contemplate it. *See Perlmutter*, 51 Fla. L. Weekly at S166; *see also Publix Super Mkts., Inc. v. Levi*, 399 So. 3d 1212, 1214 (Fla. 2d DCA 2024) ("Because Levi's suit sounded in negligence, we examine only whether he has made a reasonable showing that Publix was grossly negligent.").

found that "kids have gotten hurt" because of a prior incident involving a "breakaway" railing. In its written order, prepared by Aji-Dawkins' trial counsel, it determined Santiago "testified that, prior to the incident, he advised [Estancia's owner] against installing the PVC railing because he previously observed the same type of railing break away and fall to the ground when pressure was applied."

These arguments lack evidentiary support. Santiago testified that either he or Almestica, not Estancia's owner, bought the railing. And Santiago offered the only testimony relating to its "breakaway" nature. He swore, though, that he did not tell Estancia's owner that the railing was not appropriate for its installed use until after Aji-Dawkins' fall.

Almestica was the only other member of Estancia's maintenance team. At one point, Aji-Dawkins' trial counsel argued that *Almestica* told Estancia's owner not to install the railing because it was a dangerous "breakaway" railing. But Almestica testified that Santiago told him to install the railing, and that no one expressed any concerns about its safety. And Almestica never called it a "breakaway" railing.

Santiago offered the only testimony relating to the prior incident about a child getting hurt. But he never said that he told Estancia's owner about it. Based on the arguments presented to the trial court, no reasonable person could conclude that Estancia committed gross negligence.

10

## IV.

Because Aji-Dawkins failed to make a "reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages," we reverse for the trial court to vacate its order allowing her to amend her complaint. *See* § 768.72(1).

But regrettably, our opinion must not stop here. Counsel has a duty of candor to the court. *See* R. Regulating Fla. Bar 4-3.3. This includes an obligation to correct a false statement of material fact or law previously made. *Id*. The Oath of Admission to The Florida Bar requires attorneys to swear that they "will never seek to mislead the judge or jury by any artifice or false statement of fact or law." Counsel further has a duty of competence. See R. Regulating Fla. Bar 4-1.1. This "requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for representation." *Id*.

Our system is doomed to fail if lawyers do not comply with these basic principles. Trial courts should not have to verify the truth of every statement a lawyer makes, and indeed, the sheer number of cases before them precludes it. Lawyers must always tell the truth, even if it does not benefit their case. Aji-Dawkins' trial counsel has fallen short of this standard, and so we direct the Clerk of Court to provide a copy of this opinion to The Florida Bar for further investigation.

11

REVERSED and REMANDED with instructions.

WOZNIAK and WHITE, JJ., concur.


Alan M. Pierce, of Liebler, Gonzalez & Portuondo, Miami, for Appellant.

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED